UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ANTONIO DOS SANTOS CARLOS, Petitioner | CIVIL DOCKET NO. 1:19-CV-00878-P |
| VERSUS | JUDGE DRELL |
| WILLIAM BARR, *ET AL.*, Respondents | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion for Release (ECF No. 21) due to the coronavirus pandemic filed by *pro se* Petitioner Antonio Dos Santos Carlos ("Dos Santos Carlos") (A# 213073876). Dos Santos Carlos is an immigration detainee in the custody of the Department of Homeland Security/U.S. Immigration and Customs Enforcement ("DHS/ICE"). Dos Santos Carlos is being detained at the Adams County Correctional Center ("ACCC") in Washington, Mississippi. He was detained at the LaSalle Detention Center in Jena, Louisiana at the time of filing his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1).

Because Dos Santos Carlos cannot show that he is entitled to emergency injunctive relief, his Motion (ECF No. 21) should be DENIED.

I. **Background**

Dos Santos Carlos is a native and citizen of Angola. ECF No. 1-2 at 13. Dos Santos Carlos arrived in the United States, applying for admission at the Laredo,

Texas Port of Entry on August 8, 2017. ECF No. 1-2 at 13. He has been detained since that date. *See id.*

Dos Santos Carlos alleges that he was interviewed by Angolan officials on August 14, 2018, who informed him that travel documents would not be issued because he is not considered an Angolan National. ECF No. 1 at 6. Therefore, Dos Santos Carlos argues he is stateless, and there is no likelihood of his removal in the reasonably foreseeable future under *Zadvydas v. Davis*, 533 U.S. 678 (2001).

The Petition (ECF No. 1) was served on the Government, and a Response was filed (ECF No. 18). The merits of the Petition remain pending.

Dos Santos Carlos has now filed a Motion for Release (ECF No. 21) seeking release due to the coronavirus ("COVID-19") pandemic.

II.  **Law and Analysis**

Dos Santos Carlos seeks an immediate release from custody, which the Court construes as a motion for temporary restraining order ("TRO"), preliminary injunction, and ultimately habeas relief due to COVID-19. Rule 65 of the Federal Rules of Civil Procedure provides for a TRO, in pertinent part, as follows:

> (b)(1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition, and (B) the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required.

Fed. R. Civ. P. 65.

For a preliminary injunction to be granted, a petitioner must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. *See Bhatia v. Warden*, 1:16-CV-1125, 2017 WL 1026054, at *1 (W.D. La. Jan. 24, 2017), *report and recommendation adopted*, 2017 WL 1017634 (W.D. La. Mar. 15, 2017) (citing *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)).

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion." *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990). "The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish any one of the four criteria." *Black Fire Fighters Ass'n*, 905 F.2d at 65.

1. <u>Dos Santos Carlos has not established entitlement to injunctive relief.</u>

Dos Santos Carlos is a civil detainee. As a result, his detention must remain "nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Civil immigration detainees are specifically entitled to the protections of the Fifth Amendment to the United States Constitution. Its Due Process Clause, in relevant part, forbids the government to "depriv[e]" any "person . . . of . . . liberty . . . without

3

due process of law." Civil detention thus implicates the Due Process Clause: "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See id.* at 693.

The Supreme Court has long held that civil detention must be justified: "[G]overnment detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and 'narrow' nonpunitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal citations and quotations omitted). Civil detention becomes unconstitutional when "punitive" in nature, meaning "not [or no longer] reasonably related to a legitimate, nonpunitive governmental objective." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

Dos Santos Carolos may succeed on his substantive due process claim by establishing that his detention does not reasonably relate to a legitimate governmental purpose. He may make this showing, for example, by proving that, due to his age, immune deficiencies, or other comorbidities, he faces an elevated risk of contracting COVID-19 or suffering serious illness from it; that his particular circumstances also heighten the risk; and that preventive measures are difficult or impossible, leaving him unduly exposed to contracting the virus. *See Vazquez*

4

*Barrera*, 2020 WL 1904497, at \*5 ("Here, the Court finds that detention of Plaintiffs, who are at high risk of serious illness or death if they contract COVID-19, in MPC, where social distancing and proper hygiene are impossible, does not reasonably relate to a legitimate governmental purpose.").

The Court recognizes the risk to all prisoners and detainees posed by COVID-19. But a petitioner's claims must be distinct in some respect. *See Martinez Franco v. Jennings*, No. 20-CV-02474-CRB, 2020 WL 1976423, at \*3 (N.D. Cal. Apr. 24, 2020) ("Franco does not identify, and the Court has not seen, a case finding that increased likelihood of contracting the virus rendered unconstitutional the detention of a person without underlying medical conditions or some other vulnerability."). The Fifth Circuit has explained that "[t]he 'incidence of diseases or infections, standing alone,' do not 'imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks.'" *Valentine v. Collier*, No. 20-20207, 2020 WL 1934431, at \*3 (5th Cir. Apr. 22, 2020) (quoting *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009)). This Court has already concluded the same: "[P]risoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation." *Riggs v. Louisiana*, No. CV 3:20- 0495, 2020 WL 1939168, at \*2 (W.D. La. Apr. 22, 2020).[1] Otherwise, the claims of any prisoner or detainee would be

---

[1] And so have many others. *See, e.g., United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at \*4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification."); *Saillant v. Hoover, et al.*, No. 1:20-CV-00609, 2020 WL 1891854, at \*5 (M.D. Pa. Apr. 16, 2020) (denying habeas relief in part because the petitioner sought habeas corpus relief merely because he was "detained and subjected to a generalized risk of contracting COVID-19").

equally meritorious–or equally meritless–notwithstanding their individual situations. That result would be untenable.

To separate meritorious claims from generalized risk, some courts have focused upon underlying detainees' medical conditions, detainees' criminal histories or tendency toward violence, and the detention facility's response to the pandemic. *See Vazquez Barrera*, 2020 WL 1904497, at *6. Other courts have created non-exhaustive lists of factors that may be considered in determining whether to grant habeas relief based on COVID-19 concerns. *See Saillant*, 2020 WL 1891854, at *4; *Vazquez Barrera*, 2020 WL 1904497, at *6. This Court recently compiled a number of factors in determining whether to grant habeas release to ICE detainees. *See Dada, et al. v. Witte, et al.*, 1:20-CV-458, ECF No. 17 at 22-23. Specifically, the Court considered:

(1) whether the petitioner has been diagnosed with COVID-19 or is experiencing symptoms consistent with the disease;

(2) whether the petitioner is among the group of individuals that is at higher risk of contracting COVID-19 as identified by the CDC, due to the petitioner's age or an underlying health condition;

(3) whether the petitioner has been, or has likely been, directly exposed to COVID-19;

(4) the physical space in which the petitioner is detained, and how that physical space affects his risk of contracting COVID-19;

(5) the efforts that detention facility officials have made to prevent or mitigate the spread of, or harm caused by, COVID-19;

(6) any danger to the community, or to the petitioner's immigration proceedings, that may be posed by the petitioner's release; and

(7) any other relevant factors.

*See id.*

Dos Santos Carlos has not been diagnosed with COVID-19, and he has not alleged that his age automatically puts him at higher risk for COVID-19 according to the Center for Disease Control ("CDC")[2]. Dos Santos Carlos does not allege that he has any of the underlying medical conditions recognized by the CDC that place someone at higher risk for severe illness from COVID-19."[3] According to the CDC, "people of any age with the following conditions **are at increased risk** of severe illness from COVID-19:

- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 or higher)
- Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Sickle cell disease
- Type 2 diabetes mellitus."

*See id.*[4]

---

[2] *Older Adults,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 13, 2020).

[3] *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019- ncov/need-extra-precautions/people-at-higher-risk.html (last visited July 13, 2020).

[4] The CDC also states that "people with the following conditions **might be at an increased risk** for severe illness from COVID-19:
- Asthma (moderate-to-severe)
- Cerebrovascular disease (affects blood vessels and blood supply to the brain)
- Cystic fibrosis
- Hypertension or high blood pressure
- Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines
- Neurologic conditions, such as dementia

7

Dos Santos Carlos does not allege that Respondents have failed to implement any procedures that would protect him from contracting COVID-19. In fact, Dos Santos Carlos alleges that his unit had already been in quarantine due to a chicken pox outbreak. ECF No. 21 at 3-4.

Moreover, according to ICE, there are currently no cases of COVID-19 at ACCC, and there have been no deaths resulting from the virus.[5] A total of 35 cases have been diagnosed at ACCC this year, but the infected detainees have either recovered or been released.[6]

Because Dos Santos Carlos has not been diagnosed with COVID-19 or directly exposed to the virus; does not have any condition recognized by the CDC that puts him at a higher risk of contracting the virus; and is housed in a facility with no reported cases of COVID-19, Dos Santos Carlos cannot show a substantial likelihood that he will prevail on the merits of his claim for release due to COVID-19 or a substantial threat that he will suffer irreparable injury if the injunction is not

- Liver disease
- Pregnancy
- Pulmonary fibrosis (having damaged or scarred lung tissues)
- Smoking
- Thalassemia (a type of blood disorder)
- Type 1 diabetes mellitus"

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 13, 2020).

[5] https://www.ice.gov/coronavirus (last visited July 13, 2020).

[6] *Id.* ("Total confirmed COVID-19 cases" is the cumulative total of detainees who have tested positive for COVID-19 while in ICE custody since testing began in February 2020. Some detainees may no longer be in ICE custody or may have since tested negative for the virus.").

granted. *See Bhatia*, 2017 WL 1026054, at *1. Therefore, Dos Santos Carlos is not entitled to a TRO or preliminary injunction.

### III. Conclusion

Because Dos Santos Carlos cannot show that he is entitled to injunctive relief, IT IS RECOMMENDED that the Motion for Release (ECF No. 21) be DENIED. The merits of his *Zadvydas* claim regarding the length of his detention that was raised in the Petition (ECF No. 1) will be addressed separately, in due course.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed.R.Civ.P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 13th day of July 2020.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE